21

In The
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Brownsville Division

United States District Court
Southern District of Texas
FILED

MAR 0 6 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| PAUL CAMERON KAVANAUGH, Ph.D., | § | |
| Plaintiff; | § | |
| | § | |
| VS. | § | |
| | § | C. A. No. B-01-104 |
| | § | |
| BROWNSVILLE COMMUNITY HEALTH | § | |
| CLINIC CORPORATION, d/b/a | § | |
| BROWNSVILLE COMMUNITY HEALTH | § | |
| CENTER, | § | |
| Defendant. | § | |

------------------------------------------------------------------
**PLAINTIFF'S AMENDED COMPLAINT - THIRD**
------------------------------------------------------------------

## I    INTRODUCTION

1.   COMES NOW PLAINTIFF PAUL CAMERON KAVANAUGH, Ph.D., complaining of Defendant BROWNSVILLE COMMUNITY HEALTH CLINIC CORPORATION d/b/a BROWNSVILLE COMMUNITY HEALTH CENTER, his former employer.  Plaintiff demands a jury in this employment case based on the wrongful termination of plaintiff's employment.  Plaintiff asserts claims under the constitutions of the United States of American and the State of Texas, claims under federal statutes including 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Acts of 1964 and 1991, As Amended; and the Age Discrimination in Employment Act; the Employee Retirement Income Security Act ("ERISA")/ Comprehensive Omnibus Budget Act ("COBRA"); the Health Insurance Protection and Accontability Act ("HIPPA");and plaintiff also asserts state common law causes of action as pendent claims.

Copies of all previous exhibits are hereby incorporated by reference.

2.   The substantive changes in this third amended complaint from the second amended complaint are plaintiff's addition herein of claims under the Employee Retirement Income Security Act ("ERISA")/ Comprehensive Omnibus Budget Act ("COBRA"); and the Health Insurance Protection and Accountability Act ("HIPPA"). These claims are asserted in paragraph 23 herein.

## II   JURISDICTION

3.   This court has jurisdiction over both the parties and the subject matter.

## III   PARTIES

4.   Plaintiff PAUL CAMERON KAVANAUGH ("plaintiff" or by name) is an individual residing in Cameron County, Texas.

5.   Defendant, BROWNSVILLE COMMUNITY HEALTH CENTER, is an assumed name for BROWNSVILLE COMMUNITY HEALTH CLINIC CORPORATION ("defendant," "clinic," "employer," or by name), a nonprofit organization doing business in Cameron County, Texas.  Defendant has appeared and answered herein.  The defendant clinic is funded by public money by the local, state and federal governments.  The defendant clinic is open to the public, is a public accommodation, and is a de facto agency of the City of Brownsville.

## IV   STATEMENT OF THE CASE

6.   This case is based on a series of illegal and

discriminatory occurrences that happened at the Brownsville Community Health Center in Cameron County, Texas within the applicable limitations periods.

7. Plaintiff was employed with the Brownsville Community Health Center as director of Youth Health Services from November, 1998 until his unlawful termination on July 27, 2000.

8. Beginning in the spring of 1999, the Plaintiff began reporting violations of law to the Texas Department of Health and other management officials. Specifically, the Plaintiff told the Texas Department of Health auditor that there were problems and complaints about misappropriation of monies to the Campus Care Centers. The auditor issued a report stating that income for the Campus Care Centers should be divided into three separate accounts so that monies could be properly accounted for.

9. After the auditor's report, Plaintiff realized that the Brownsville Community Health Center had not complied with the auditor's request and wrote memos to his department supervisors stating his concerns. Later, Plaintiff spoke to the Texas Department of Health and complained of similar problems and concerns of continued misappropriations concerning the Campus Care Centers.

10. Plaintiff also reported these matters to various supervisors at the Brownsville Community Health Center. Plaintiff's supervisors and the executive director, Paula Gomez,

resisted disclosure of financial records of the Campus Care Centers to authorized agencies pursuant to proper requests. Based on such conduct, plaintiff concluded his supervisors and the executive director, Paula Gomez, did not appropriately respond to his concerns.

11. At about the time that Plaintiff began to voice his complaints with regard to misappropriation, defendant's management began to tell plaintiff that he had problems "communicating with employees." Management had not previously told Plaintiff he had any job-related problems.

12. At the time plaintiff voiced his concerns regarding use and possible misuse of public money, many changes were occurring at the Campus Care Centers. Employees had concerns and problems not related to Plaintiff. The project assistant of the Campus Care Centers informed Plaintiff that she could not resolve communication problems between employees. She asked Plaintiff to intervene and Plaintiff complied.

13. In early March 2000, Plaintiff's immediate supervisor gave plaintiff a written complaint regarding "communication problems with employees." This was the first written warning plaintiff had received. Whatever Plaintiff would do to alleviate any dissension among employees was futile, and unsupported or ignored by his supervisors.

14. Plaintiff was eventually placed on disciplinary probation

because of said "allegations," even though the Brownsville Community Health Center received national recognition for the work of the Campus Care Centers while Plaintiff was their director. Plaintiff avers that Defendant's allegations of communication problems were only a pretext to terminate Plaintiff for reasons alleged to be unlawful herein.

15.   Defendant's illegal discrimination against Plaintiff was in part retaliation for plaintiff's good faith reporting of a violation of the law by defendant to an appropriate law enforcement authority.  Plaintiff's right to voice concern over such matter of public importance is protected Free Speech under the federal and state constitutions.

16.   Plaintiff alleges that defendant's allegations regarding "communication problems with employees" were simply a pretext used to terminate plaintiff.   On July 27, 2000, defendant advised plaintiff of the termination of his employment.   Plaintiff immediately responded in writing stating that the termination was wrong and that he would challenge same.   On July 28, 2000, plaintiff requested the matter be presented to the clinic's Board of Directors.

17.   Upon being advised that defendant would terminate him, plaintiff opposed defendant's conduct toward him both orally and in writing.  Thus, plaintiff asserted his rights under the applicable federal statutes by opposing a practice made unlawful under

thereunder. Thereafter the Board of Directors conducted a hearing on August 16, 2000. On or about September 5, 2000 defendant advised plaintiff that his termination was final.

18. Mexican-Americans, or persons of otherwise Hispanic origin, predominate in management, and hold the key decision making positions. Plaintiff was the only male management employee who was not Mexican-American, or otherwise of Hispanic origin. Mexican-American, or persons otherwise of Hispanic origin, who were management employees and who offered constructive criticism of administrative matters, were not similarly treated. Plaintiff was replaced by a younger Mexican-American male (Alix Flores), in his late 20's or 30's.

19. Defendant's conduct challenged herein constitutes discrimination against plaintiff for reasons including plaintiff's race/ethnicity ("white"), his gender (male), his age (over 40), because plaintiff opposed a practice made unlawful under applicable statutes (Retaliation), and his assertion of his right to Free Speech under the state and federal constitutions.

20. It is, and at times relevant was, defendant's official policy, and defendant affirmatively represented to plaintiff that defendant would "employ ... practices designed to ensure ... equal employment opportunity without regard to race, color, age, religion, sex, or national origin." (Exhibit D- personnel policies and procedures manual; April 2000). Defendant further represented

to plaintiff that defendant would "[follow all federal, state and local laws regarding the employment relationship, including all laws regarding nondiscrimination with respect to race, national origin, citizenship, color, religion, gender, age (over 40), or disability ...." (Exhibit D- personnel policies and procedures manual; April 2000). Pursuant to such policy and conduct, a contract or *quasi* contract existed between plaintiff and defendant regarding such matters. Defendant's actions against plaintiff violated this contract or *quasi* contract.

21. Plaintiff relied on defendant's representation to him as stated above, by among other things, declining to seek other employment. In violation of defendant's stated policy, defendant discriminated against plaintiff in terms and conditions of employment based on race/ethnicity ("white"), his gender (male), his age, and because plaintiff opposed a practice made unlawful under applicable statutes (Retaliation). As the result of defendant's conduct, plaintiff has sustained loss of income.

### V    MISCELLANEOUS

### A.    Title VII Claims

22. On or about April 26, 2001 plaintiff filed a charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC") (Exhibit A). On June 29, 2001 the EEOC issued a Notice of Right to Sue (Exhibit C), and plaintiff timely asserted his rights based on such charge herein.

## B.    ERISA, COBRA, and HIPAA Claims

23.  Based on information and documents made available by defendant to date in discovery, it appears defendant failed to give plaintiff notice under ERISA/COBRA of plaintiff's rights to continuation coverage under the employee group health Plan upon the occurrence of certain qualifying events, including at the time plaintiff became eligible for Plan membership in 1999 and upon termination of employment in 2000.  Similarly, after termination defendant failed to give plaintiff a certificate of creditable coverage as required by HIPAA.

## VI    DAMAGES

24.  As a result of the incidents described above, Plaintiff has suffered mental pain and anguish.   In all reasonable probability, Plaintiff will continue to suffer such mental pain and anguish for a long time into the future.  Plaintiff sustained loss of earnings, and a loss of earnings capacity, and in all reasonable probability, this incapacity will continue long into the future.

## VII    PRAYER

25.  WHEREFORE, premises considered, Plaintiff prays the court upon final hearing enter judgement for plaintiff and order such relief as includes that stated below.

25.  ORDER that upon final trial, Plaintiff recover judgement against Defendant for Plaintiff's damages, including actual, liquidated, compensatory and punitive.

26. ORDER that defendant pay plaintiff appropriate civil penalties pursuant to ERISA/COBRA and HIPAA.

27. ORDER that defendant pay plaintiff prejudgment interest as allowed by law.

28. ORDER that defendant pay plaintiff interest on said judgment at the legal rate from date of judgment.

29. ORDER that defendant pay plaintiff reasonable attorney's fees and costs.

30. ORDER that defendant not retaliate against plaintiff.

31. ORDER such other and further relief as the Court deems proper and just.

Respectfully submitted,

Francisco J. Zabarte
SBOT No. 22235300
Federal I.D. No. 10747
SANCHEZ,WHITTINGTON,JANIS, & ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, TX 78521-2284
956.546.3731 telephone
956.546.3766 telecopier

David Horton
SBOT No. 10014500
NEEL & HORTON, L.L.P.
Post Office Box 2159
South Padre Island, Texas 78597
956.761.6644 Telephone
956.761.7424 Telecopier

Attorneys for Plaintiff
Paul C. Kavanaugh, Ph. D.

## CERTIFICATE OF SERVICE

I served a copy of this document on counsel of record, to-wit:

Mr. Raymond Cowley
SBOT No. 04932400
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
4900 A-2 North Tenth Street
McAllen, TX 78504
956.686.1287 Telephone
956.686.6197 Telecopier
Attorney for Defendant,

by means of Fax and First Class Mail, on March 6, 2002.


_____
Francisco J. Zabarte