IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 5 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| PAUL CAMERON KAVANAUGH,  § <br> Plaintiff  § <br> § <br> VS.  § <br> § <br> BROWNSVILLE COMMUNITY HEALTH § <br> CLINIC CORPORATION, D/B/A  § <br> BROWNSVILLE COMMUNITY HEALTH § <br> CENTER  § <br> Defendant  § | CIVIL ACTION NO. B-01-104 <br><br> JURY TRIAL DEMANDED |

### REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

BROWNSVILLE COMMUNITY HEALTH CLINIC CORPORATION, D/B/A BROWNSVILLE COMMUNITY HEALTH CENTER, Defendant, files this its reply to the response filed by the Plaintiff to the Defendant's motion for summary judgment, and in support respectfully shows:

1.  The Plaintiff has totally failed in his response to address the Defendant's motion for summary judgment, insofar as the motion seeks summary judgment on the claim brought under 42 U.S.C. §1983, and similarly has failed to address that portion of the Defendant's motion seeking summary judgment on the claims of breach of contract, and of retaliation under Title VII and the ADEA. Apparently, therefore, the Plaintiff no longer urges those claims. With respect to those portions of the motion which the Plaintiff chose to address, moreover, the following will show that the Plaintiff has provided the Court with no basis whatsoever on which to deny the motion for summary judgment.

### The Plaintiff's Response Regarding The Claim Brought Under The Texas Constitution Disturbingly Mis-states The Governing Law

2.  The Plaintiff has referred in his response to the Houston Court of Appeals <u>Jones v. Memorial Hospital</u> decision for the proposition that monetary damages in fact are recoverable on claims brought under the Texas Constitution. In so doing, the Plaintiff has cited the <u>Jones</u> case as

748 S.W.2d 891, and has represented the case as one decided in 1998. Actually, the proper citation is 746 S.W.2d 891, and the case was decided in <u>1988</u> and not in 1998. Such citation errors aside, the proper reach and interpretation of the <u>Jones</u> decision specifically was addressed by the Texas Supreme Court in its 1995 <u>City of Beaumont</u> decision, wherein the Court had the following to say about whether or not the 1988 <u>Jones</u> decision actually held, or permissively could have held, that monetary damages are recoverable for a violation of the Texas Constitution:

> <u>Jones</u> is not to be read as implying from the Constitution a cause of action for damages for violation of free speech rights . . . Our review of the language of the Constitution leads us to conclude that there is no basis from the text of the Constitution to assume a party is given more than equitable protection.[1]

3.　The <u>City of Beaumont</u> case was cited by the Defendant in its motion for summary judgment, specifically for its holding that monetary damages cannot be recovered on a claim brought under the Texas Constitution, notwithstanding what might be inferred from the earlier <u>Jones</u> decision.[2] For the plaintiff, therefore, to rely on the very same <u>Jones</u> decision as standing for a proposition completely contrary to the Supreme Court's holding in <u>City of Beaumont</u>, and to do so without mentioning to this Court the Texas Supreme Court's express limitation of the reach of the <u>Jones</u> decision, and to represent the <u>Jones</u> decision as a post - <u>City of Beaumont</u> decision rather than as a decision which both pre-dated and in fact was expressly limited by the <u>City of Beaumont</u> decision, demonstrates a disturbing lack of candor and provides the Court with absolutely no basis on which to deny the Defendant's motion for summary judgment.

---

[1] 896 S.W.2d 143, 149. (Tex. 1995).

[2] <u>Id.</u> at 147. ("We hold there is no implied private right of action for damages arising under the free speech and free assembly sections of the Texas Constitution.")

### The Plaintiff's Response Fails Entirely To Show Why The U.S. Supreme Court Rendell-Baker and Blum Cases Are Not Governing Of The Instant Dispute

4. In his response, the Plaintiff, without explanation or discussion, casually dismisses the United States Supreme Court's Rendell-Baker v. Kohn,[3] and Blum v. Yaretsky[4] decisions on the basis that "[s]imple Shepardizing of the cases . . . show [sic] an extensive history of case [sic] which distinguish them within a context of their facts." By such a flippant response, the Plaintiff seemingly invites the Court to do the legal briefing which he and his attorney apparently have chosen not to do for themselves. Both of the Supreme Court cases, in fact, involved virtually complete federal funding of private entities, extensive governmental regulation and, in one case, performance of a function [secondary education] which almost universally has been fulfilled by the State, and, in the other, providing medical care to the indigent population, much as does this Defendant. In both such cases, the extensive governmental involvement was found to be insufficient to turn the private-sector entities into state actors. Instead, the pivotal issue in both cases, as in the instant case, was whether the decisions complained of as unconstitutional were made by private individuals or by the State.

5. As shown in the Defendant's motion, the decision to terminate the Plaintiff's employment was made entirely by Ms. Paula Gomez, with no involvement whatsoever from the government. The Plaintiff, in turn, in no way even addressed that pivotal issue in his response. Moreover, the levels of governmental support and regulation alleged by the Plaintiff in his response as applicable to the Defendant were, in any event, unquestionably far less than those found by the Supreme Court to be insufficient in Rendell-Baker and in Blum. Once again, therefore, the Plaintiff's off-hand response to the state action issue provides no basis whatsoever on which this Court should deny the Defendant's motion for summary judgment.

---

[3] 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

[4] 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 34 (1982).

## The Plaintiff's Arguments With Respect To Employment Discrimination Are Misdirected And Meaningless

6.  In his response, the Plaintiff nowhere has denied or even addressed the fact that he was non-Hispanic, male and in his mid-40's when Paula Gomez saw fit to hire him, or that he exuded those identical characteristics a short 19 months later when Ms. Gomez determined that the best interests of the organization called for his dismissal. As such, the "same actor" inference gives rise to a presumption that age, national origin and gender, whether regarded separately or as a whole, could not have been a factor in his dismissal. The arguments relied on by the Plaintiff for overcoming such a presumption, in turn, are completely mis-directed and without substance.

7.  For example, the Plaintiff once again argues in his response, just as he did in his initial whistleblower lawsuit, and just as he does in his present pleadings, that he reported financial irregularities to the State and thereafter was subjected to criticism and ultimately to dismissal. Such an argument, however, which Plaintiff's own deposition testimony has shown to be untrue,[5] fails in any event to implicate national origin, age or gender as factors responsible for his dismissal. In particular, the Plaintiff nowhere argues that Hispanics, or females, or persons younger than himself similarly reported financial irregularities and were not disciplined or discharged. Accordingly, his allegations of financial improprieties, and of his alleged reporting of them, are of no relevance whatsoever to his afterthought claims of employment discrimination, and again provide no basis at all for denying the Defendant's motion.

8.  In resisting summary judgment on the employment discrimination claims, the Plaintiff argues that the Defendant's policy manual was changed to give the Executive Director final authority with regard to discharges, that the position offered to the Plaintiff in lieu of discharge allegedly no longer exists, that some of the disciplinary write-ups allegedly were not signed until shortly before the Plaintiff's termination, and that there is no documentation that the Plaintiff's probation was ever lifted. Even taking those allegations as true, however, none of them in any way show that national origin, age or gender was a factor in his dismissal. Similarly, the fact that

---

[5]Motion for Summary Judgment, Exhibit "B," pp. 55-59, 181-84, 196-97, 217, 219.

the Defendant may have, many years earlier, been sued for employment discrimination, or may have settled such a claim, is of no evidentiary value at all with respect to whether or not the Plaintiff's claims of discrimination are merited. Indeed, the Plaintiff does not even plead his case as one supported by evidence of a pattern and practice of discrimination, and surely no credible evidence of a pattern and practice of discrimination has been brought before the Court.

9. Regarding the claim of sex discrimination, the Plaintiff refers to the remark allegedly made that "too bad you're not Joan Dentler," and to the reference made to him as being a "bull in a china closet" as evidence of a discriminatory intent. As shown in the Defendant's motion, however, the Joan Dentler remark, insofar as ever made, is the very type of benign and unrelated stray remark which, as a matter of law, can provide no basis on which to infer a discriminatory intent. The term "bull in a china closet," in turn, by an reasonable interpretation, merely refers to an individual who acts with a reckless abandon unsuited to the circumstances, and in no way denotes the gender either of the actor or of the persons affected thereby. For the Plaintiff even to point to such a metaphor as somehow showing anti-male bias is, if anything, merely indicative of the Plaintiff's complete lack of any credible evidence to support his claims.

10. The Plaintiff seemingly asks by his response for more time to conduct discovery. In reply, additional discovery will in no way change the fact that the person hired to replace the Plaintiff was male, just as the Plaintiff was when hired, and that being a male could not, therefore, have been a factor in his dismissal. Similarly, further discovery will in no way alter the fact that the Plaintiff's predecessor in the position was non-Hispanic, just as he himself was when hired, and just as is his immediate superior, Ms. Alpert, and that his national origin, therefore, similarly could not have been a factor in his dismissal. Further discovery, moreover, will not change the fact that the Plaintiff was in his mid-40's when both hired and let go, and that the two persons directly responsible for evaluating his performance and for potentially deciding on his continued employment were themselves older than he was, as was his predecessor in the position, and as were various others within his same department. Age, therefore, also could not have played any

Respectfully submitted,

_Raymond A. Cowley_
Raymond A. Cowley
State Bar No. 04932400
Federal ID No. 8642
4900 N. 10th Street, Ste. A-2
McAllen, Texas 78504
Telephone: (956) 686-1287
Telecopier: (956) 686-6197

ATTORNEYS FOR DEFENDANT
BROWNSVILLE COMMUNITY HEALTH
CLINIC CORPORATION d/b/a
BROWNSVILLE COMMUNITY HEALTH
CENTER

OF COUNSEL:

**RODRIGUEZ, COLVIN & CHANEY, L.L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded by certified mail, return receipt requested to the following counsel of record, on the __4__ day of __April__, 2002.

Mr. Francisco J. Zabarte
Sanchez, Whittington, Janis & Zabarte, LLP
100 North Expressway 83
Brownsville, Texas 78521-2284

Mr. David Horton
Neel & Horton
P.O. Box 2159
South Padre Island, Texas 78597

_Raymond A. Cowley_
Raymond A. Cowley

-7-